Madeline **FINN–VERBURG**, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF LABOR**, Defendant.

No. 98–CV–0912.

United States District Court, N.D. New York.

Aug. 14, 2001.

224

See also, 122 F.Supp.2d 329.

Peter W. Henner, Clarksville, NY, for Plaintiff.

Hon. Eliot Spitzer, Attorney General of the State of New York, Albany, NY (Richard J. Freshour, of counsel), for New York State Dept. of Labor.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On June 10, 1998, plaintiff Madeline Finn–Verburg ("Finn–Verburg" or "plaintiff") commenced the instant action against defendant New York State Department of Labor ("NYSDOL" or "defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, U.S.C. 42 § 2000e. Defendant answered the complaint on July 16, 1998. Following completion of discovery, defendant moved for summary judgment on all claims against it. This motion was granted in part and denied in part on November 8, 2000. *Finn–Verburg v. New York State Department of Labor,* 122 F.Supp.2d 329 (N.D.N.Y.2000).

Trial of plaintiff's claims commenced on April 3, 2001, in Albany, New York. At the conclusion of a five day trial, the jury returned a special verdict in favor of the defendant. Judgment was entered accordingly.

Plaintiff now moves to set aside the jury verdict and seeks an order entering judgment as a matter of law in her favor, pursuant to Federal Rule of Civil Procedure 50, or in the alternative; for a new trial pursuant to Federal Rule of Civil Procedure 59. Defendant opposes. Oral argument was heard on May 25, 2001, in Albany, New York. Decision was reserved.

## II. FACTS

This action arises from plaintiff's claims of hostile work environment sex discrimination by her supervisor, Roger Alley ("Alley"). Familiarity with the underlying

facts of plaintiff's claims as set forth in the November 8, 2000, Memorandum Decision and Order dismissing some of plaintiff's claims is presumed. *Finn–Verburg*, 122 F.Supp.2d at 329–31. Additional facts pertinent to the instant motion are briefly set forth below.

Finn–Verburg was, and is, an employee of NYSDOL. She claims that she was harassed by Alley, and treated with hostility because of her gender. Because of this harassment, she claimed to have had no choice but to reduce her work schedule to limit contact with Alley. At the trial of this matter, in addition to her own testimony, she proffered the following in support of her claim.

First, plaintiff called Karen Martin ("Martin"), an equal opportunity investigator for NYSDOL.[1] In June through August of 1997, Martin investigated plaintiff's internal harassment complaint. Martin testified that she was told by employees that Alley did have supervisory problems with women, but that she found plaintiff's claim of gender-based harassment to be unsubstantiated. While testifying as a witness for the defense, Martin admitted on cross-examination that in 19 years as a NYSDOL employee, she had never heard of an allegation of harassment being substantiated by an internal investigation.

Plaintiff also called her immediate supervisor, John Dillon ("Dillon"). Dillon testified that he was aware of Alley's conduct toward plaintiff and Deborah Atwell ("Atwell"), another auditor under Alley's supervision. However, Dillon also admitted that he often told plaintiff that much of

what she perceived to be harassment was within the "legitimate prerogatives" of a manager. (Def. Mem. at 4.)

Plaintiff called three female clerical employees—Virginia Ford, Beth Schmidt ("Schmidt"), and Lucinda Kentris ("Kentris")—who all testified to harassing conduct on the part of Alley. This harassing conduct consisted of glaring, yelling, sarcasm, "stalking" in the office, and at least one comment that was arguably sexual in nature.[2]

Plaintiff also proffered the testimony of James Stewart ("Stewart"), a co-worker of plaintiff's. Stewart acknowledged witnessing some of the conduct alleged by plaintiff. He also testified that he witnessed Alley yell at female employees, as well as one male employee; however, Stewart testified that the male employee, Keith Austin ("Austin"), was not treated with the same intensity as female employees. Alley subsequently denied this characterization, but also testified that Austin actually thanked him for being "hard" on him.

In addition, plaintiff introduced testimony that three women, including plaintiff, resorted to extreme measures to get away from Alley because of his treatment toward them. Atwell requested a transfer 75 miles away from her home to a NYSDOL office in Poughkeepsie, New York. Kentris resigned. As noted above, plaintiff requested a reduced work schedule.[3] Plaintiff also demonstrated that no male subordinate of Alley had ever resorted to similar steps to avoid him, and that Alley

---

1. Martin was called as a witness by both parties.

2. Alley allegedly referred to a medical procedure obtained by Schmidt as a "dusting and cleaning."

3. Though plaintiff initially told NYSDOL that she needed the reduced work schedule as part of a pregnancy-related leave, she later claimed that the true reason for reducing her schedule was to limit her contact with Alley. In any event, she continues to the present date to work for defendant on a reduced work schedule.

supervised a relatively equal number of male and female employees.

In defense, NYSDOL introduced evidence through the testimony of Alley, Martin, Wallace Brennan ("Brennan"), Julie Hickey ("Hickey"), and Marie Wilson ("Wilson"). All testified that they had not observed Alley display any gender-based animus toward women. Wilson also testified that she was under Alley's supervision when he was a field supervisor, and that he had never conducted himself in an inappropriate manner on any site visits. All these witnesses testified, however, that they had either experienced or heard of Alley having problems with his supervisory techniques.

Following its deliberations, the jury returned a special verdict form making the following findings. First, the jury found that Finn–Verburg was subjected to a hostile work environment by Alley. Second, the jury found that this hostile work environment was not based upon her gender. Upon the return of this verdict, judgment was entered on behalf of the defendant. The instant motion followed.

## III. DISCUSSION

### A. Rule 50 Motion

■ On a motion pursuant to Rule 50(b), the trial court views the evidence adduced at trial in the light most favorable to the nonmoving party, without weighing the credibility of the witnesses or strength of the evidence, to determine whether "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993) (quoting *Mattivi v. South*

*African Marine Corp., "Huguenot"*, 618 F.2d 163, 168 (2d Cir.1980) (alteration and omission in Samuels )).

■ Plaintiff's motion for judgment as a matter of law must be denied. Viewing the evidence most favorable to the defendant, there was at least some evidence in this case that Alley did treat both male and female employees poorly. While plaintiff argues that the degree and quality of the evidence offered on this point was such that the jury *should* have concluded that Alley's conduct toward plaintiff was based on her gender, it simply cannot be said that in light of the testimony supporting the defendant's theory of the case, there was a "complete absence of evidence supporting the verdict [and] that the jury's findings could only have been the result of sheer surmise and conjecture." *Samuels*, 992 F.2d at 14.

This is so because, as noted above, there was some evidence from which the jury could have concluded that Alley's aggressive and hostile treatment of employees was not motivated by gender. This conclusion could have been based on the evidence that Alley treated at least one male employee in the same manner as that in which he treated plaintiff as well as other female employees. At least one female employee testified that she had neither observed, nor been subjected to the type of hostile conduct at issue in this case. In addition, the jury could have credited the testimony of Martin, Alley, Brennan, Hickey, and Wilson to find that plaintiff had failed to prove that Alley's conduct toward plaintiff was based on her gender.

While an independent review of the aforementioned evidence might have resulted in an equally persuasive case for the plaintiff, that is not the standard to be applied on a Rule 50 motion. Where, as here, there was some basis, however

slight, for the jury to return the verdict that it did, the Rule 50 motion must be denied.

## B. *Rule 59 Motion*

 Unlike the standard applicable to a Rule 50 motion for judgment as a matter of law, the trial court may independently "weigh the evidence" without favor to the non-movant on a Rule 59 motion. *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992). A "trial judge should be least inclined to disturb a jury's verdict, based entirely or primarily upon witness credibility, where the conflicting accounts of the witnesses are equally plausible (or implausible), and there is no independent evidence in the trial record" requiring the court to credit one version of events over another. *Ricciuti v. New York City Transit Authority*, 70 F.Supp.2d 300, 308 (S.D.N.Y.1999). Where the jury resolved conflicting versions of events in favor of one party, a new trial is appropriate only where one "conflicting account is so inherently implausible as to tax credulity, or there is independent evidence in the trial record" such that finding for one party, instead of another, would "lead to a miscarriage of justice." *Id.* at 308.

 However, a Rule 59 motion also permits the trial court to independently weigh the evidence presented at trial to determine whether the jury's verdict is "seriously erroneous" or resulted in a "miscarriage of justice." *Sorlucco v. New York City Police Department*, 971 F.2d 864, 875 (2d Cir.1992). In making this determination, the trial court is afforded considerable discretion. On a Rule 59 motion, "the trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978).

 While it is true that a trial judge is afforded substantial discretion under Rule 59, the mere fact that the trial judge disagrees with the jury's verdict is not a sufficient basis to grant a new trial. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983). Grant of a new trial is warranted only where the court "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Sorlucco*, 971 F.2d at 875 (quoting *Smith v. Lightning Bolt Produc., Inc.*, 861 F.2d 363, 370 (2d Cir.1988)).

 In the instant case, plaintiff was required to prove *both* that she was subjected to a hostile work environment, and that this hostile work environment was created because of her gender. *See Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998) (To prevail on a claim of sex harassment, "the plaintiff is required to establish that the harassment complained of was based on her gender") (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The jury found that she had met her burden as to the existence of a hostile work environment, but failed to prove that this environment was based on her gender. In light of the overwhelming evidence supporting plaintiff's claim that Alley's treatment of her was gender based, this conclusion was seriously erroneous.

A review of the record in this case demonstrates that plaintiff's credible evidence showed that Alley subjected her to harassment and a hostile work environment through a pattern of verbal abuse, sarcasm, stalking behavior, and angry, intense glaring. This was corroborated through the testimony of a half dozen witnesses, including an investigator for the NYSDOL, and male and female co-employees and subordinates of Alley. Of the seven wit-

nesses called by the defense, only Wilson testified that she had never seen or heard of Alley engaging in inappropriate behavior. Plaintiff's evidence also showed that Alley subjected other female co-workers to a hostile work environment and that several of them took action to escape his supervision.

In light of its finding that Finn–Verburg was subjected to a hostile work environment, it is clear that the jury credited the testimony of plaintiff's witnesses, and discarded the testimony of defendant's sole contradictory witness, in finding that plaintiff and numerous other female employees had been subjected to a hostile work environment by Alley. Moreover, there was scant evidence that Alley subjected male employees to a similarly hostile work environment. Defendant has placed great weight upon the fact that there is evidence in the record demonstrating that Alley treated Austin harshly. However, this evidence is insufficient to support the conclusion that Alley treated male and female employees in an equally harsh manner.

As noted above, Alley himself testified that Austin *thanked* Alley for his "hard" treatment. Several witnesses to Alley's treatment of Austin testified that Alley's treatment of him was less hostile and that it lacked the "fervor and intensity" of Alley's conduct toward his female subordinates. (Pl. Mem. at 4.) There was little evidence adduced at trial to support the jury's verdict that the hostile work environment created by Alley was not gender based. Other than the limited and somewhat superficial testimony concerning Austin (who was not called as a witness by the defendant), there was no evidence present-

ed that Mr. Alley ever engaged in any harassing behavior toward male employees. This fact is significant because it is undisputed that Alley supervised a relatively equal number of male and female employees. Also, contrary to the experiences reported by female employees, all three of the male employees who testified in this case stated that they had not been harassed by Mr. Alley.

In fact, almost all of the evidence and arguments at trial concentrated on the issue of whether or not plaintiff and other women under Alley's supervision were subjected to a work environment that was hostile. The basic position of the defense throughout the trial was that although Alley was a strict manager, there was no hostile work environment at all.[4] The defense devoted little time, resources, or argument to the proposition that there was, or may have been, a hostile work environment, but that it was not gender based. Alley himself emphatically denied that a hostile work environment of any type existed. While evidence of a gender-neutral basis for the harassment could have provided an effective defense for NYSDOL, *see Brown v. Henderson,* 257 F.3d 246 (2d Cir.2001), there was scant evidence proffered in this case.

## IV. *CONCLUSION*

In view of the evidence introduced at trial, the jury's determination that plaintiff's hostile work environment was not gender based was against the weight of the credible evidence. The record in this case clearly shows both that Alley repeatedly subjected female employees to abusive and hostile treatment, and that

---

**4.** If the jury had accepted the defendant's proof and in answer to the first question on the special verdict form, found that plaintiff was not subjected to a hostile work environment, the verdict would not have been seri-

ously erroneous or a miscarriage of justice. Under such circumstances, a new trial would not be warranted. That, of course, is not the case.

male employees were not subjected to the same sort of systemic abuse. Therefore, the jury reached a seriously erroneous result in its verdict that the work environment was hostile but not gender based.[5]

The plaintiff is entitled to a new trial. Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment as a matter of law is DENIED;

2. Plaintiff's motion for a new trial is GRANTED; and

3. The judgment dismissing the complaint is VACATED.

IT IS SO ORDERED.

See also: 236 A.D.2d 158, 665 N.Y.S.2d 444.

---

**5.** In the interest of judicial economy, an application for a certificate of appealability pursuant to 28 U.S.C. § 1292(b) by either side will be seriously entertained. Of course, the final decision as to whether to grant an appeal from this non-final order rests with the Second Circuit. *Id.*